IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00880-WYD-STV

JANE MARSHALL,

    Plaintiff,

v.

TARGET CORPORATION,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Plaintiff's Motion for Sanctions Due to Defendant's Spoliation of Evidence (the "Motion"). [#31] The Motion was referred to this Court. [#32] This Court has carefully considered the Motion and related briefing, the case file, and the applicable case law. The parties declined the Court's invitation for an evidentiary hearing [*see* #37], and the Court has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court **DENIES** the Motion.

**I.    Background Facts**

    On April 26, 2015, Plaintiff allegedly fell at a Target store in Aurora, Colorado (the "incident"). [#31-1 at 1] According to Plaintiff, it had been raining outside and she fell on a wet spot just inside the main entrance, where the carpet transitioned to tile. [*Id.*] Initially, Plaintiff did not believe the injury was serious and, as a result, she did not report the injury to any Target employees and continued shopping. [*Id.* at 2] The next day,

1

however, Plaintiff's hand was still hurting. [*Id.*] Plaintiff went to an orthopedic surgeon and an x-ray revealed that Plaintiff had fractured her humerus. [*Id.*]

On April 29, 2015, Plaintiff called Target to inform the store of the incident. [#31-2] The next day, she completed a guest incident report stating that she "slipped and fell" when "entering the store." [*Id.*] Plaintiff listed the cause of the incident as "wet floor" and stated that she had a broken humerus. [*Id.*] A Target employee, Elizabeth Prince (formerly Holmquist) signed the guest incident report. [*Id.*; #35 at 3]

After receiving the incident report, Ms. Prince began looking for video of the incident.[1] [#35-1 at 21:9-12] She found a video of the entrance where the incident occurred. [*Id.* at 23:10-12] The video showed Plaintiff entering the store, but did not show her falling.[2] [*Id.* at 23:13-20] There may also have been additional videos that could have shown Plaintiff shopping after the fall. [#31-6 at 40:6-10, 55:7-18]

On May 1, 2015, Target notified Sedgwick Company, a third party claims adjuster that handles Target's premises liability claims, of Plaintiff's fall. [#31-3 at 4; #31 at 5] That same day, Plaintiff spoke with a company representative, reporting that it was raining on the day of the incident and that water had been tracked onto the floor. [#31-3 at 6] She said that she slipped and fell where the carpet transitions to tile. [*Id.*] She

---

[1] Pursuant to Target's policies and procedures, upon learning of a guest incident, a Target employee is directed to: (1) "[p]artner immediately with AP to determine if any cameras captured the incident and/or incident scene"; (2) "[e]nsure AP secures the 20 minutes before and the 20 minutes after the time of the incident"; and (3) "determine if secondary video was captured," among other responsibilities. [#31-4 at 2]

[2] Target's entryway has a single carpet that begins immediately upon a guest's entry into the store. [#35-8] After that carpeted area, there is tile flooring. [*Id.*] A second carpet may be placed after the first carpet on poor weather days to provide additional carpet covering. [*Id.*; *see also* #31 at 8; #31-8 at 29:10-13] According to Ms. Prince, the video of the entryway only showed the first carpeted area, and not the tile area or whether a second carpet had been added on the date of the incident. [#35-1 at 24:17-25:20]

further explained that her left humerus was fractured and that she was "making a claim." [*Id.*]

On May 6, 2015, Tyler Hammer, a representative of Sedgwick Company, called and left a voicemail for Plaintiff. [#31-3 at 6] Mr. Hammer also opened a new claim. [*Id.* at 7] In his claims notes, Mr. Hammer indicated that he needed to review any relevant video footage. [*Id.*] Five days later, Mr. Hammer spoke with Ms. Prince. [*Id.* at 8-10] Ms. Prince told Mr. Hammer that there was "video of the guest coming in," but that the "incident [was] just out of camera coverage." [*Id.* at 10]

On May 18, 2015, Mr. Hammer spoke with Plaintiff. [*Id.*] Plaintiff stated that she had a fractured humerus and fractured alna, and that surgery was possible. [*Id.* at 13] Plaintiff indicated that she thought Target was "a little responsible" and that she would be filing a claim against Target for medical expenses. [*Id.* at 14]

On June 4, 2015, Mr. Hammer sent Ms. Prince an email requesting any video that Target had saved. [*Id.* at 3] In the email, Mr. Hammer stated that it would "be helpful to see what the front of the store looks like and how the area was set up for a rainy day." [*Id.*] Ms. Prince responded that the video could not be retrieved because Target only saves its videos for thirty days. [*Id.* at 2] The video was apparently overwritten on or around May 26, 2015—approximately 30 days after the incident. [*See* #35-2 at 78:19-22, 82:7-13; #35-1 at 36:24-25, 37:1-7; #35-7]

On March 20, 2017, Plaintiff filed the instant action in Arapahoe County District Court. [#3] Plaintiff's Complaint brings a single claim for relief pursuant to Colorado's premises liability statute, Colo. Rev. Stat. § 13-21-115. [*Id.* at 3-4] On April 10, 2017,

Target removed the matter to this Court. [#1] Plaintiff filed the instant Motion on April 6, 2018 [#31], Defendant has responded [#35], and Plaintiff filed a reply [#36].

II. Analysis

"Destruction of evidence, or spoliation, is a discovery offense." *Gates Rubber Co. v. Bando Chem. Indus. Ltd.*, 167 F.R.D. 90, 101 (D. Colo. 1996). As part of their discovery obligation, "putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007). "Once it is established that a party's duty to preserve has been triggered, the inquiry into whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether 'what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards.'" *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1164 (D. Colo. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)).

A court may impose sanctions for the destruction or loss of evidence. *See Cache La Poudre,* 244 F.R.D. at 620. "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because [they] knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). The two most important factors in determining spoliation sanctions are culpability of the offending party and actual prejudice to the other party. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1297 (D.N.M. 2016); *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.,* No. 08-2220-JWL, 2010 WL 4792388, at *2 (D. Kan. Nov. 17,

2010). To obtain an adverse inference instruction, the party claiming prejudice must also prove bad faith. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009); Fed. R. Civ. P. 37(e)(2) (with respect to electronically stored information, court may give adverse inference instruction "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation").

### A. Whether the Duty to Preserve was Triggered

The first question the Court must answer is whether the duty to preserve was triggered. In making this decision, the Court must determine whether litigation was imminent. Undoubtedly, the filing of a lawsuit triggers a duty to preserve. *See Cache La Poudre Feeds, LLC,* 244 F.R.D. at 621. But, "the obligation to preserve evidence may arise even earlier if a party has notice that future litigation is likely." *Id.* As a result, "a party should not be permitted to destroy potential evidence after receiving unequivocal notice of impending litigation." *Id.* Nonetheless, "the duty to preserve relevant documents should require more than a mere possibility of litigation." *Id.* "Ultimately, the court's decision must be guided by the facts of each case." *Id.*

"In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary." *Zbylski*, 154 F. Supp. 3d at 1163. Additionally, "[c]ourts have found the duty to preserve to be triggered based on an internal investigation into an incident." *Id.* Ultimately, "a party's duty to preserve arises when it has notice that the [evidence] might be relevant to a reasonably-defined future litigation." *Id.*

5

Weighing these factors, the Court concludes that Target had a duty to preserve the videos showing the entryway. It appears that the videos were overwritten on May 26, 2015, thirty days after the incident. [*See* #35-2 at 78:19-22, 82:7-13; #35-1 at 36:24-25, 37:1-7; #35-7] As of that date, Target knew that Plaintiff had fallen in one of their stores and had broken her humerus in the fall, including due to Plaintiff's guest incident report filed on April 30, 2015 [#31-2], Ms. Prince's efforts to find video of the incident [#35-1 at 21:9-12], Target's notification to Sedgwick Company on May 1 of Plaintiff's fall [#31-3 at 4; #31 at 5], Plaintiff's reports of the incident to a Sedgwick Company representative, and Mr. Hammer's opening of a claim and communications with Ms. Prince and Plaintiff [#31-3 at 6-14]. This is the type of incident that a company could expect to lead to litigation. Moreover, Target knew that Plaintiff had claimed that she had fallen on a wet spot on the floor of its store, that she held Target at least partially responsible for her injuries, and that Plaintiff intended to file a "claim" for her medical expenses. [*See* #31-3 at 14 (Plaintiff indicating to Mr. Hammer that she believed Target to be "a little responsible" and that she would be filing a claim against Target for medical expenses); *see also id.* at 6 (Plaintiff's statement to a Sedgwick Company representative that she was "making a claim"). Such details were sufficient to put Target on notice that there would be "a reasonably-defined future litigation." *Zbylski*, 154 F. Supp. 3d at 1163; *see also Browder*, 187 F. Supp. 3d at 1296 (duty to preserve triggered where plaintiffs' attorney sent a letter to defendant stating that plaintiffs "intend[ed] to pursue a claim in regards to the incident at issue")

Such details were also sufficient to place Target on notice that the video showing the entryway may be relevant to that reasonably-defined litigation. In particular, the

video may have shown whether a wet floor or other warning sign had been placed at the entryway. Indeed, in his June 4, 2015 email, Mr. Hammer acknowledged that the entryway video would "be helpful to see what the front of the store looks like and how the area was set up for a rainy day." [#31-3 at 3] Thus, the Court concludes that Target was on notice prior to the entryway video's destruction that the entryway video might be relevant to a reasonably-defined future litigation. Accordingly, the Court concludes that Target had a duty to preserve the entryway video.

Similarly, Target was on notice that the videos showing Plaintiff shopping were relevant to the litigation. Target disputes that Plaintiff fell, let alone that she broke her humerus during the fall. [*See* #31-6 at 29:22-24; *see also* #35 at 1-3] The videos of her shopping would have shown Plaintiff's arm and whether she was holding it, or favoring one arm over the other. Such evidence is relevant to whether Plaintiff fell and, if so, the severity of her injuries. Accordingly, the Court concludes that Target had a duty to preserve any videos of Plaintiff shopping on the date of the incident.

**B. Actual Prejudice**

Having concluded that Defendants had a duty to preserve evidence that was lost or destroyed, the Court must next determine whether Plaintiff was prejudiced by the loss of evidence. "Spoliation sanctions are proper when the court determines that a party had a duty to preserve relevant evidence, and the adverse party was prejudiced by the destruction of the evidence." *Zbylski*, 154 F. Supp. 3d at 1170-71. "The prejudice must be actual, rather than merely theoretical." *Id.* at 1171.

Here, while Plaintiff may have suffered some prejudice by the destruction of the video, that prejudice is largely speculative. Neither party disputes Ms. Prince's

7

assertion that the videos did not record the incident. Moreover, Ms. Prince testified that the entryway video did not depict the area where a second carpet could have been placed [#35-1 at 24:17-25:20; #35-8], and Plaintiff has not presented any evidence contradicting that assertion, such as footage from the same video camera on a different rainy day.[3] As a result, the entryway video would not have shown whether Target had utilized additional carpeting on the date in question. Moreover, while the entryway video may have shown the presence of a wet floor warning sign, it would not have conclusively established the absence of such a sign; had the sign been placed on the second carpet (if a second carpet was utilized) or at the beginning of the tile flooring, for example, that sign would have been out of view of the entryway video. [#35-1 at 24:17-25:20; #35-8] Thus, even if Target had preserved the video and the video failed to depict a warning sign, that fact alone would not have established that Target failed to provide a warning sign on the date in question.[4] Finally, while Plaintiff speculates that video of her shopping may have shown her favoring her uninjured arm [#31 at 8], Plaintiff has not presented any evidence that she was indeed favoring that arm after the fall. As a result, the Court can only speculate as to what the shopping videos would

---

[3] The Court provided the parties an opportunity to request an evidentiary hearing [#37], and neither party accepted the Court's offer.

[4] Plaintiff also argues that the video could have confirmed the veracity of Target employee Vanessa Garcia Medina's deposition testimony that she would walk the entryway every hour to confirm that the floors were free of moisture accumulation. [#31 at 8] Although Plaintiff argues that such video would be relevant to whether Target took reasonable care to discover the dangerous condition and protect against it under the Premises Liability Act, even assuming Ms. Garcia Medina did walk the floor every hour, significant moisture could still accumulate in the interim period. As a result, the prejudice resulting from Plaintiff's loss of the ability to confirm or dispute Ms. Garcia Medina's testimony is minimal.

have shown. Accordingly, the Court finds that Plaintiff has been only minimally prejudiced by Target's failure to preserve the videos.

### C. Sanctions

Because the Court finds that the duty to preserve was triggered and that Plaintiff has suffered some minimal prejudice, the Court must determine what sanctions, if any, are appropriate. *See Zbylski*, 154 F. Supp. 3d at 1170-71; *Cache La Poudre*, 244 F.R.D. at 621. In evaluating the appropriate sanction, the two most important factors are the culpability of the offending party and actual prejudice to the other party. *See Browder*, 187 F. Supp. 3d at 1297; *HR Tech.*, 2010 WL 4792388, at *2. Weighing these factors, the Court concludes that significant sanctions are not warranted.

First, there has been no evidence that Target intentionally destroyed the videos. Rather, it appears that Ms. Prince viewed the entryway, determined that it did not depict the incident, and therefore did not take action to preserve the videos. [*See* #35-1 at 23:13-20; #35-2 at 79:5-17] As detailed above, Ms. Prince should have realized the potential import of the videos and taken action to preserve them. Similarly, Mr. Hammer should have acted sooner to ensure that the videos were not destroyed. But, once again, while Ms. Prince and Mr. Hammer were negligent in failing to preserve the videos, Plaintiff has not presented any evidence of intentional misconduct.

Second, as detailed above, Plaintiff's prejudice has been minimal. While the videos may have confirmed that Target took actions to warn customers about a wet floor, the videos would not have confirmed the absence of such a warning. As a result, Target's failure to preserve the videos has not significantly impacted Plaintiff's ability to prosecute her case.

Thus, weighing both Target's culpability and Plaintiff's prejudice, the Court concludes that a significant sanction is unwarranted. As a result, the Court declines to recommend that the district court instruct the jury that it may make any inference it believes appropriate in light of the spoliation.[5] The Court agrees with Plaintiff, however, that it may be appropriate to allow Plaintiff to present evidence at trial about the failure to preserve the videos. *See Hatfield v. Wal-Mart Stores, Inc.*, 335 F. App'x 796, 804 (10th Cir. 2009) (affirming district court's decision in slip and fall case: (1) allowing plaintiff to present evidence regarding the unavailability of store surveillance video, though video from the date in question did not show the actual fall, but (2) refusing to impose adverse inference or other instruction). But, ultimately, the Court believes that issues of relevance should be determined by Senior United States District Court Judge Wiley Y. Daniel, the presiding district court judge, once he has had the opportunity to hear the other evidence that has been presented. Accordingly, the Court denies without prejudice Plaintiff's request to present evidence about Target's failure to preserve the videos. Plaintiff may include this evidence in the proposed Final Pretrial Order, and the parties may raise the relevance issue with Judge Daniel at the Final Pretrial Conference.

---

[5] The instant case differs significantly from *Browder*, relied upon by Plaintiff for the proposed instruction. There, the defendant failed to preserve potentially critical evidence despite the fact that the plaintiff's attorney sent a letter stating that the plaintiff would be pursuing a claim and specifically requested that the defendant preserve the evidence that was later destroyed. 187 F. Supp. 3d at 1296.

Thus, for the reasons stated above, it is **ORDERED** that Plaintiff's Motion [#31] is **DENIED.**

DATED: July 19, 2018

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge